Bryce Advocate Who, wait for the next one? Final case, that we.. My other phone went dead. Oh my goodness. The final case is 13-17-88 United States vs. Gary Thank you. May it please the court, my name is Patrick Boyle. I am the appointed attorney for the defendant, appellant, Mr. Charles Gary. Your honors, my client was a passenger in a car that was stopped by the Rockford police. He was asked to exit the vehicle. He was shown his ID, his name was run, there was no warrants outstanding for him, there was no parole holds outstanding for him. Despite that fact, he was placed under a full custodial arrest, he was handcuffed, he was searched. As a result of this search, cell phones were recovered by the arresting officers, they were put in evidence bags. He was driven back in handcuffs in the back of a squad to the Rockford police and placed in a holding cell. Our first argument on appeal is that there was no probable cause for this arrest. I think the only argument that the government can possibly make for probable cause is this idea of collective knowledge of the entire group of officers created probable cause. The problem with that is it's really unreconcilable with the direct testimony of the Rockford police officer who actually placed my client under arrest and searched him and recovered the cell phones. His testimony, which I cite in my brief, is that all he was told by the other officers, by radio, was make probable cause, stop the vehicle. Hopefully the car will commit some kind of traffic offense and you guys can go from there. Did you concede that the odor of marijuana gave rise to a reasonable suspicion that allowed the officers to search the occupants of the car? Well, it could, Your Honor. The problem is that, of course, the search of the vehicle, they asked the occupants to leave the vehicle, which they're entitled to do. They're obviously entitled to engage the occupants, question them, even look around the vehicles or anything in plain view. There was absolutely nothing recovered, no residue, no evidence whatsoever of the use of marijuana. But again, this is well beyond a Terry stop. This was a full custodial arrest of my client and that is the only way that they were able to recover these cell phones. So I don't think, and I don't think at any stage, the government relied upon the odor of marijuana to justify this full custodial arrest. What they're relying upon is this interaction from this undercover by-officer significantly. The only interaction the by-officer had was with the driver of the vehicle, my client as the passenger. There's no reaching back and forth. There's no reaching across my client. The undercover officer's testimony was very clear. He had absolutely no interaction with my client, no exchange of money, no exchange of drugs, no exchange of conversation. Specifically, all he said about my client was he seemed to be preoccupied with a phone. And as we've all learned, sometimes you're having lunch with someone and they're really having lunch with their phone. They're not even really merely present. They're having a lunch with their phone. So that's significant. And this really wasn't even a true drug deal. The officer handed some money, presumably in a closed fist, to the driver of the vehicle. And then he was only handed two small bags. He really didn't even receive what he wanted. I think Judge Roedner's trying to say something. I apologize, Judge. Is that correct? No. I was laughing at the thought of having lunch with a phone. So again, that was based upon that. It's absolutely mere presence. And again, this by-officer doesn't say, listen, I had a drug deal with two people, including that passenger. All he said was, again, not according to me, not according to my client, the officer's own sworn testimony who made the stop in the search, quote-unquote, make probable cause, stop the vehicle. So as an initial matter, there was no probable cause for this arrest. Why is it not reasonable for the police to infer that, unlike, for example, all the bar patrons in Ybarra, that somebody who's selling heroin from a car is unlikely to have an innocent bystander with him in the front seat? Because that is the nature of drug dealing in contemporary society, society for better or for worse. The government continually brings cases, brings cases in this area, in Rockford, alleging open-air drug markets. The idea that there are narcotics being sold on street corners, being sold from cars, being sold by schools, where there are people coming and going, seeing this, unfortunately, that is part of their life. It is unfortunately a plague on their neighborhoods, but they see it. They are present for it. They are in absolute close proximity to it, whether they're standing next to somebody on a street corner or they're sitting next to them in a police car. But they're not a participant. And it would be unreasonable for the police to just do a sweep and arrest everybody in proximity. One. One other person in a car. That's correct, Judge. But he had absolutely no role in the offense. He did not have any contact with the by-officer. There, again, was absolutely nothing exchanged. There was no conversation. And the by-officer, to his absolute credit, did not suggest anything else in his testimony. He had nothing to do with this transaction at the side of the car, a transaction that was videotaped and audiotaped by that by-officer. And there was nothing in that videotape that implicated my client as being a participant in the deal. Okay. We then go to, of course, the search. The Riley decision makes that fairly clean cut that in order to search a cell phone, in order to go into it, access its internal memory, pull out information, the mandate is clear from the Supreme Court, get a warrant. And I certainly don't want to concede that, frankly, the cases the government cite, as far as the good faith argument, really made me take a closer look at this as far as the idea was that, was this search really incident to an arrest? I would argue that it's not. I mean, I think because of the Riley decision, it kind of, well, we don't really need to address that. But I think it does dovetail with the good faith argument. The idea that the officer who actually arrested my client, patted him down, put him in handcuffs, recovered the cell phones, wasn't the one who subsequently searched the cell phones and accessed the internal memory. That was done much later. It was done back at the police station. It was done by a DEA agent, Williams. As his testimony, his partner observed him, it was described as he was just messing around with the phones, accessing them, going through them. Agent Williams testified himself. I happened to show up at the Rockford police station. I went into a narcotics room. There was a Ziploc envelopes. I opened them up, pulled out the phones and started searching them. I would submit that's not incident to arrest. One of the cases that the government cites, U.S. Forces Ortiz from this circuit, they talk about. They talk about the Supreme Court decision of Chadwick. Warrantless search of seized property cannot be justified when the search is remote in time or place from the arrest. It was. My client's in a holding cell. There's no emergency here. He has no access to it. He can't delete anything. They should have gotten a warrant. They had every opportunity to get a warrant. Once it is no longer in control of an arrestee or cannot be accessed, the search is no longer incident to arrest and a warrant is required. So again, I don't think the search was incident to arrest. Even if it is, Riley says it's not permissible. There is no good faith exception, which I think in some ways the government is acknowledging with their recent submission of that other circuit decision, which talks about these kind of tracking devices placed on automobiles. The reason Riley doesn't even really address good faith is because it's clear there wasn't any binding clear precedent regarding the specific police conduct, which is the warrantless search of a cell phone. It wasn't clear. It was all over the place. And the clear Davis mandate, as far as good faith, is in order to give the officers a benefit of the doubt, there has to be that binding precedent of that specific conduct. And there was. And I think the government's acknowledging that, and that's why they're asking you to look at this other case. Ms. Mantrek? May it please the court. My name is Heidi Mantrek, and I represent the United States in this appeal. As the appellant notes, there's no dispute here that after Riley, the court cannot have erred in denying the defendant's motion to suppress. And given the state of the law at the time, there was no error. And that's because an objectively, an officer could reasonably rely on the state of the law at the time, specifically the holding of United States v. Robinson of the Supreme Court, which broadly authorized the search of a person and the objects found on a person, incident to his lawful arrest. No, that's the problem, though, isn't it? Incident to the lawful arrest? Well, that is the argument that the defendant is raising now, that there's a concern about remoteness. But that argument is squarely controlled by United States v. Edwards, which holds that when you're on either at the time of the arrest or upon taking the arrestee back to the police station. Are you citing that Robinson case as a case in which a court found a mistake of law would be a reason not to suppress? Sorry, judge, over the Robinson case? Isn't that what you said? I'm sorry, can you repeat the question? Did you cite to a case called United States v. Robinson? Yes. Yes, Your Honor. And are you citing to that case as one where a court found that a mistake of law would be a reason not to suppress? No, Your Honor, I believe you're referring to the Davis opinion, Davis v. United States. Is that what you're citing Davis for then? Yeah, for the proposition that when, yes, when an officer makes a reasonable, what is effectively a reasonable mistake about the state of the law at the time of the search, then there's a good faith exception to the exclusionary rule, and suppression is not warranted because there's no deterrent benefit to excluding that evidence because there's no evidence of culpability on the part of the officer's conduct. I mean, the Supreme Court, of course, reversed and in Riley, and it did not engage in this analysis that you are urging us to adopt, where we would consider whether the officers have a good faith but mistaken belief that they're following the law. Yes, and Your Honor, I believe the issue there is simply that the Riley court didn't have occasion to consider whether the good faith exception would apply in the two cases before it in Riley, that that wasn't argued at the time because at the time the government's argument and the state of California's argument was that cell phones could lawfully be searched then. Well, the other officer was someone unrelated to the arrest, that's all. I just wonder if that does change that at all. They said it was just messing around with them and stuff. I don't know whether that matters. Judge Mannion, I don't think it does, and that's because of United States v. Edwards. The defendant pointed out the case of Chadwick, which has this remoteness analysis, and that's applied to, that was a case that involved a 200 pound locker that was found near the arrestee, and the holding there is when you're dealing with personal property that's not immediately associated with the arrestee, your search of that property must not be remote in time or place from the arrest. That's different from the type of property we're considering here, which is a cell phone found on the defendant, which is considered immediately, property immediately associated with the arrestee, and that's squarely controlled by Robinson and on whether the incident to arrest exception applies. Could you go to the mere presence, please, because you relied on Pringle for the idea that being present in the car during the drug sale was more than mere presence, but in Pringle, the drugs and the money were in the car generally, and they were within the defendant's reach, and the occupants of the car in that case all disclaimed an association with the drugs and money, but in this case, the only drugs that were found were on the person of the driver, so I'm trying to figure out how Pringle applies here. Well Judge Roper, I think it applies in two senses. First is the Supreme Court's finding in Pringle that ordinarily drug dealers are not going to engage in drug dealing and admit kind of innocent third parties into that endeavor, and so because in this case we have a drug deal that's done openly from the confined quarters of a car in which the defendant is a passenger, Pringle says you can infer some common enterprise between the passenger and the driver in relation to that drug deal. But secondly, although it's true that in Pringle you don't know exactly to whom the drugs belong, and here we do know that the drugs were found on Jones, we also have the call to the dispatcher prior to that stop in which there are references to the involvement of not just Jones, but the word we is used to say we were here, we were there, we're getting our stuff together, which again gives the police reason to believe that even if the drugs are only found on one of the people in the car, the other person is also involved. So he wasn't using the royal we. Certainly officers could reasonably infer that he was not. Ms. Manshrek, if there is an error here, and I don't know whether, I don't mean to suggest that there is, but if there were, I've got to say I have a little trouble seeing it as harmless. And I was wondering if you could address the points the defense made in their reply brief about, you know, we've got the principal evidence coming from co-conspirators with credibility issues and the emphasis that the cell phone evidence was given in closing. Well, Your Honor, I don't think the cell phone evidence really was all that emphasized in closing. In fact, I think the vast majority of the time in closing is spent on the co-conspirators and their evidence. Ultimately, the defendant wasn't charged with just being involved in one drug deal. He was charged with being involved in a conspiracy to distribute a kilogram of heroin. Given that you're going to get, I assume, the standard instruction about not trusting these guys who were cooperating, judging their evidence with great care, right? Absolutely, Your Honor. And if I'm a juror, knowing that this guy was holding the cell phone that the officer called to set up this undercover by is pretty compelling evidence. It is compelling evidence, but Your Honor, I think there's even more compelling evidence in here that objectively corroborates the testimony of the co-conspirators. And that's the call between Hollis Daniels and Sam Peoples. And the government spent a good deal of time discussing that particular call in the closing argument because it was far more He's not a party to that conversation, but he is discussed in that conversation. And Daniels is complaining about the fact that the defendant gets caught with the phone. He uses the words, the phone, while being in the same car as a runner. And in the context of the testimony from all the three other co-conspirators saying there's a rule in this organization that you don't ride, the dispatcher should not be riding with the runner, that was credible evidence from which the jury could say those three co-conspirators' testimony is corroborated independently. If there are no further questions, I would ask that the Court affirm the judgment of the District Court. Thank you very much, Ms. Manchrek. Thank you. Mr. Boyle, come on back. Thank you, Judge. I'm afraid I might have used my time to begin with. You may have another moment. Thank you. Respectfully, I would disagree with the government's assertion that a container, a storage container, is somehow different than a cell phone. And I think that's what the Riley decision went to such great lengths to bring home. The idea that cell phones now are, for many respects, someone's hope chest. They're their personal library. But how else do you reconcile Chadwick and Edwards, other than as the government did? The problem is that in those situations, incident to arrest, it's almost assumed that if it's a slip of paper, if it's a wallet, if it's a pack of cigarettes, it's small, it's immediately accessible by both the actual arresting officer and the possessor of that object. It's a very quick, simple search. Nothing can be changed. It doesn't require great manipulation or rummaging through, like a storage chest. But a phone, now they are rummaging through. And in this case, they did rummage through. They messed around with it and accessed internal information. And again, it was an incident to arrest. This is not a smartphone. This was an earlier flip phone, right? It was. Like a wallet? No. Or a notebook, an address book? I believe not, because it needed to be turned on, I believe. It needed to be accessed. It has much more storage capability. The earlier cases, just a pager punching a button, and that's the first thing you see. Earlier search of a phone that was found okay, all it did was discover that own phone's number. It wasn't accessing records. It wasn't connecting that phone to other people. And again, you have to take my word for it, the government's closing argument, both times. Ladies and gentlemen of the jury, how do we know that Mr. Gary was a member of the conspiracy? Specifically, his one allegation of what he was doing, he was the phone dispatcher for this conspiracy. How do we know this? Because of the phone. Because of the cell phone. They searched it. They found the records. They found that he had received a call and that this was the phone connected to the drug line. The jail house calls that he wasn't a party to doesn't establish that. I'm jumping around. I apologize. They cannot be relying on Davis. They're specifically asking you to, what I would call, go way beyond an impermissible expansion of Davis. This was not settled law. The officers were not relying on precedent, clear precedent, regarding what they did, the search of the cell phone. That's why they're asking you to go beyond it. I don't think the Seventh Circuit would believe that. And in fact, the Seventh Circuit has specifically talked about, in cases dealing with developing technology, the decision by Justice Posner in United States v. Garcia. This is a concern. This is a concern that the police have to be aware of. Again, we're not asking them to limit their activities or to hamstring them. What they can do is get an arrest warrant, especially in a situation here where you've got a defendant in a holding cell and you've got the phone. And so for those reasons, I ask that the conviction be reversed and it be remanded to the trial court in proceedings in compliance with the mandate of Riley. Thank you. Now, Mr. Boyle, you were appointed, right? Yes, Your Honor. You have the sincere thanks of the Court for the very fine job you have done for your client. Thank you very much. Of course, we thank Ms. Mantrec as well for the fine job that she has done for her client. So, the case will be taken under advisement.